Peelle, J.,
delivered the opinion of the court:
The question arises on the claimant’s motion, as follows:
“And now comes the State of Maine by its attorneys _ and says: Since the decision of the court m the above-entitled cause, and before its findings have been iransmitted to the Secretary of the Treasury, it comes un.d moves for a rehear *124 ing of so much of said case as relates to the date of the credit of the <$357,702.10, Maine’s quota of the direct tax, so that the amount which said State of Maine is entitled to receive from (he United States, instead of the sum found by the court, shall be <¡¡>231,909.85, for the reason that the finding of the court that said credit should be made as of the date of June 30, 1862, instead of March 2,1867, is erroneous in law.’’
The claimant also asked the court to correct the findings in conformity with said motion.
. The onty question presented by the motion, as stated by counsel, “relates to the date of the credit of the amount of the direct tax.”
The contention is that, inasmuch as the defendants did not in fact give the claimant credit on their books for the amount of the direct tax apportioned to said State until March 2, 1867, therefore, the court erred in deducting the amount thereof in the computation made as of June 30, 1862.
The facts reported by the Auditor were adopted by the court-as its findings of fact, and in respect to the question under consideration the facts recited are that “Maine assumed her quota of the direct tax levied under the act of Congress approved August 5, 1861, by re'ason of which there was due and payable from Maine to the United States $357,702.10, June 30, 1862, on which date said sum was credited by Maine to the United States, but it appears that the latter did not charge it off as paid until March 2, 1867. ”
To the facts thus reported, however, the Auditor made a supplemental report, in which it appears that, from an examination of the books of the treasurer of the State of Maine down to January 1, 1869, no mention or reference is made therein to the item of $357,702.10 and that therefore the statement of the Auditor in his previous report, that said sum had been credited to the United States as of June 30, 1862, should be received subject to the nonappearance of the item on the treasurer’s books. Said Auditor further reported, in his supplemental report, that “there was no settlement prior to February 25, 1867, between the United States and Maine, of the claims filed by the latter against the former under the act of July 27, 1861.”
January 29, 1862 (chapter 105, page 150, resolves of the *125 State for 1862), the State of Maine, as agreed between the parties to this action, resolved as follows:
“Whereas the Senate and House of Representatives of the United States of America in Congress assembled did, on the 5th day of August, 1861, in an act entitled ‘A bill to provide increased revenue from imports, to pay the interest on the public debt, and for other purposes,’ assess a tax of 1128,826 upon this State, that sum being Maine’s proportion of $20,000,000 assessed upon the United States; and
"Whereas the said act provides that upon such part or parts of said tax as shall have been actually paid into the Treasury of the United States on or- before the last day of June in the year to which said payment relates shall be entitled to a reduction of 15 per cent, provided the State shall give notice, by the governor, to the Secretary of the Treasury on or before the second Tuesday of February, 1862, of its intention to assume, assess, collect, and pay into the Treasury of the United States the tax so assessed: Therefore,
‘4 Resofoed, That the governor of this State be authorized and requested to notify the Secretary of the Treasury of the United States that the State of Maine will assume, assess, collect, and pay into the Treasury of the United States the sum apportioned to this State in said act of August 5, 1861.”
Of this action the Secretary of the Treasury was notified by the governor of the State prior to the second Tuesday of February, 1862.
The Auditor further reports that if the direct tax is to be credited as of March 1, 1867, the date when the final settlement was made between the United States and the State, then the amount due the State is $231,910.85.
As before stated, the sole question is as to when the State should be credited with the payment of the direct tax. The assumption of the tax by the State was, of course, for the purpose of getting the benefit of the reduction of 15 per centum provided for by section 53 of the act. (12 Stat. L., 292, 311.)
That section provides in substance that in case of the assumption of the tax apportioned to any State, and notice thereof by the governor to the Secretary of the Treasury of its intention so to do, on or before the second Tuesday of February, 1862, that such State shall, upon the payment of the amount on or before the last day of June in the year to which such payment relates, be entitled to a reduction of 15 per *126 centum, and if paid on or before the last day of September of the year to which such payment relates, to a reduction of 10 per centum, and in the same section it is provided that “such year shall be regarded as commencing- on the first day of April.”
Section 13 of the act provides in substance that the direct tax shall be laid on all real estate and improvements thereon, subject to taxation, on the 1st of April, 1862, so that the tax year may be regarded as beginning April 1, 1862.
So that, if the claimant’s contention bo correct, the State not only had the tax year ending April 1, 1863, within which to collect the tax, but had until June 30 thereafter to pay the same, less 15 per centum deduction therefrom, into the Treasury of the United States.
The State assumed the tax in order to get the reduction, and this was the inducement held out in the act to get the money into the Treasury on or before June 30, 1862.
To hold that the State was entitled to the deduction of 15 per centum upon the payment of the tax into the Treasury at the expiration of three months from- the end of the tax year would in effect be to give no force or effect to the purpose or provision for the assumption of the tax by the State.
By section 53 it is provided that the amount of direct tax apportioned to any State “ shall be liable to be paid and satisfied, in whole or in part, b3r the release of such State, * * duly executed to the United States, of anj'- liquidated and determined claim of such State * * * of equal amount against the United States,” allowing the State “the same abatement of the amount of such tax as would be allowed in case of payment of the same in money.” And by the act of May 13, 1862 (12 Stat. L., 384), that section is amended so as to apply to “ claims of States for reimbursement of expenses incurred, by them in enrolling, subsisting, clothing, supplying, arming, equipping, paying, and transporting troops employed in aiding to suppress the present insurrection against the United States, as shall be filed with the proper officers of the United States before the 30th of July next. And in such cases the abatement of 15 per centum shall be made on such portion of such tax as may be paid by the allowance of such claims, in whole or in part, the same as if the *127 final settlement and liquidation thereof had been made before the 30th of June. ”
Bj’ reference to the report of the Auditor, adopted by the court as its findings of fact (36 C. Cls. R., 531), it will be observed that the State of Maine properly expended in the enrollment and equipment of troops to aid in suppressing the rebellion over §1,000,000. On April ( 25, 1862, she filed a claim for over a million of‘dollars, upon which there was allowed over §900,000, and the State was paid, prior to her assumption of the direct tax, §320,000, leaving filed prior to June 30, 1862, ample claims to offset the amount of said tax.
The act of May 13, 1862 (supra), maj'' be regarded as a legislative construction of section 53 so far as relates to the time within which the tax was to be paid to entitle the State to the reduction of 15 per centum, for it will be observed that said section is “ construed as applying to such claims of States for reimbursement of expenses incurred * * * as shall be filed with the proper officers of the United States before the 30th of July next'’’’ — i. e., before the 30th of Juty, 1862 — in which event it is further provided that the abatement of 15 per centum shall be allowed “ the same as if the final settlement and liquidation thereof had been made before the 30th of June,” i. e., before the 30th of June, 1862. That language is susceptible of no other construction.
Hence it seems clear to the court that to entitle the State to the reduction of 15 per centum the direct tax must be credited as of June 30,1862, and upon that basis the State, in the computation made by the Auditor in his first report, has been allowed.
If we are correct in the views we have expressed, it is immaterial when the tax was, as a matter of fact, credited upon the books of the Treasury. The first is a matter of law, while the second is a matter of bookkeeping.
For the reasons given the claimant’s motion is overruled.